Submitted on briefs March 29, affirmed May 17, rehearing denied
June 14, 1921.

## MEADE *v.* CHURCHILL.

(197 Pac. 1078.)

**Appeal and Error—Findings Supported by Evidence are Conclusive.**

1.   Where there is abundant evidence to support the trial court's
findings, they are conclusive on the Supreme Court.

**Evidence—Sheriff Presumed to have Paid Proceeds of Foreclosure
Sale to County Clerk.**

2.   As there is a legal presumption that official duty has been
performed, where the court found that a mortgagee receipted to
the county clerk for the proceeds of a foreclosure sale, it must
be presumed that the sheriff paid the money to the county clerk.

**Mortgages — Owner of Land may Sue Mortgagee for Amount Re-
ceived on Sale in Excess of Amount Due.**

3.   Where a mortgagee received from the county clerk the pro-
ceeds of a foreclosure sale at which he was the purchaser, the
owner and holder of the record title may sue him for the excess
of such proceeds above the amount required to satisfy the fore-
closure decree.

**Interest—Mortgagee Refusing to Pay Excess on Sale to Owner is
Liable for Interest.**

4.   Where a mortgagee receiving the proceeds of a foreclosure
sale refused on demand to pay the owner of the land the amount
in excess of that required to satisfy the foreclosure decree, such
owner is entitled to interest under Section 7988, subdivision 3,
Or. Laws, providing for interest on money received to the use of
another and retained beyond a reasonable time, as her claim was
founded upon a legal liability, and not on mere equity and good
conscience.

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

Plaintiff alleges that on August 26, 1916, in the
Circuit Court of Tillamook County, the defendant
recovered a decree against herself and husband for
$16,875, with interest at the rate of 6 per cent per
annum, from July 1, 1916; for the further sum of
$158.15, with interest at the rate of 10 per cent from
October 10, 1915; for $1,000 attorneys' fees, and

$51.80 as costs, which upon appeal to this court was affirmed except as to the item of costs. The decree provided for the foreclosure of a real mortgage upon lands in Tillamook and Multnomah Counties; and that the property should be sold and the proceeds applied to the satisfaction of the decree. It was founded upon an indebtedness which was also secured by two certain chattel mortgages on personal property in Tillamook County. It is then alleged that on September 9, 1916, $67 was realized from the sale of the personal property described in one chattel mortgage; that on October 20, 1916, $920.54 was realized upon the sale of personal property described in the other chattel mortgage; that on September 28, 1916, the Tillamook real estate was sold under the decree for $15,000; and that the proceeds of all of such sales were duly credited upon the decree. In paragraph 8 of the complaint, it is alleged:

"That by reason of the foregoing sales, and the several sums received thereunder, on the twenty-third day of October, 1916, there was due and unpaid on the said judgment and decree of the Circuit Court for Tillamook County, the sum of $2,335.05, and no more; that an execution was duly issued for the sale of the real property in Multnomah County and that property was sold on October 23, 1916, for $3,110, 'which sum was paid over to the defendant on or about said date, for which the defendant receipted' the county clerk of Tillamook County; that from the proceeds of said sale, $2,335.05 and no more, should have been applied to the full and complete satisfaction of the decree; that the balance, $774.95 belongs to the plaintiff, but is now in the hands of the defendant, for which plaintiff duly demanded payment from the defendant, with interest, but that he refuses to pay the same or any part of it; and that after the sales of real property were made and on November 20, 1916, each of them were duly confirmed by the Circuit Court of Tillamook County."

Plaintiff prays for judgment for $774.95 with interest at 6 per cent from October 23, 1916.

For answer, defendant admits the rendition of the decree in the Circuit Court of Tillamook County as alleged and that the debt was secured by the chattel mortgages; "denies that more than $14,985 was realized to apply on the judgment mentioned in its complaint" for the sale of the real property in Tillamook County; admits the amount of the sales for the other property; "denies that the amount unpaid on October 23, 1916, on said judgment is correctly stated in paragraph 8 of the complaint"; admits that the sales of the real property were confirmed and that the defendant has refused to pay plaintiff's claim or any part of it, and denies all other allegations of the complaint. In December, 1919, the cause was tried without a jury, and the court made findings of fact sustaining the allegations of the complaint, upon which judgment was rendered in favor of the plaintiff for $754.73, with interest at the rate of 6 per cent per annum from October 23, 1916, and costs, from which the defendant appeals, claiming that the court erred in the admission of evidence; in overruling his motion for a nonsuit; in finding that on October 23, 1916, there was due and unpaid on the decree $2,340.02 and no more; or that $3,094.75 was paid to the defendant on October 23, 1916; or that $754.73 or any other sum was due and owing the plaintiff; and in not entering a judgment in favor of the defendant.

AFFIRMED.

For appellant there was a brief presented by *Messrs. Botts & Winslow.*

For respondent there was a brief prepared and presented over the names of *Messrs. Johnson & Handley* and *Messrs. Wilbur, Spencer, Beckett & Howell.*

JOHNS, J.—This action grows out of the sales of certain real property which were made under the decree of the Circuit Court of Tillamook County, in a suit in which Minnie A. Meade, the plaintiff here, and her husband were the defendants, and Arthur M Churchill, the defendant here, was the plaintiff, and the sales of personal property under two different chattel mortgages which the Meades gave to Churchill to secure the debt upon which the decree was founded. The cause was tried without a jury, and the court found as a fact that from the net proceeds of the sales of the personal property under the chattel mortgages, and the land in Tillamook County, "on the 23d day of October, 1916, there was due and unpaid on the said judgment and decree of the Circuit Court for Tillamook County, the sum of $2,340.02, and no more." The court further found that by virtue of an execution, the real property in Multnomah County was duly levied upon and sold on October 16, 1916, for $3,094.75, "which sum was paid over to the defendant on or about said date, for which the defendant duly receipted the clerk of the Circuit Court for Tillamook County, Oregon."

1, 2. The complete judgment-roll in the suit of Churchill against Meade et ux. was introduced in evidence. In that record, coupled with the admissions made in the answer, there is abundant evidence to support all the findings of the trial court and for such reason, they are conclusive upon this court. From them it appears that there was a net balance of $754.73 from the proceeds of the combined sales of the real and personal property after the decree was satisfied in full and that the surplus was paid over to the defendant for which he duly receipted the county clerk. There is a legal presumption that official duty

has been performed. The property was sold by the sheriff who in the course of his official duty would receive the proceeds of the sale or its equivalent and account for or pay the money to the county clerk. The court, having found that the money from the sale of the real property in Multnomah County was paid to the defendant and that he "duly receipted the clerk of the Circuit Court for Tillamook County, Oregon," for the money, it must follow as a legal presumption that the sheriff paid the money to the county clerk. The defendant cites and relies upon the case of *Burbank* v. *Dodd*, 4 Pac. 303, which is a *per curiam* opinion of this court not published in the Oregon Reports, and which says:

"No action can be maintained by the plaintiff in an execution to recover from a bidder at a sheriff's sale thereunto the amount bid by him but not paid over to such officer; the sheriff only can maintain such an action."

3. There the plaintiff's property was sold at a sheriff's sale and the purchaser failed to pay the money to the sheriff and did not make good his bid and the plaintiff in the writ sued the bidder for the amount of his bid. It was there held that the sheriff only, could maintain the action against the bidder. Under the facts shown to exist here, that case is not in point. In the instant case the court found as a fact that the money was paid over and delivered to the defendant here, who was the plaintiff in the writ. It is also contended that there is no privity of contract and that the plaintiff cannot recover in this kind of an action. No motion or demurrer was filed to the complaint, and it was agreed that plaintiff was the owner of and held the record title to the real property which was sold and that the only interest which her

100 Or.—45

husband had in the land was an inchoate right of curtesy.

For the purposes of this opinion, we must assume that the defendant's decree against the plaintiff and her husband is fully satisfied and that from the sales of the property he received and now has $754.73, over and above the full amount of his decree. The case of *Brand* v. *Williams,* 29 Minn. 238 (13 N. W. 42), is square in point. There, the sheriff of Lyon County "held in his possession a stock of goods of Robinson & Maas, under the levies of execution against them in favor of various judgment creditors, including the plaintiffs." Three of the execution liens, "amounting to less than $2,000, were prior to that of the plaintiffs, which was the fourth in order and amounted to over $1,000." Under the writ, the sheriff sold the stock of goods for $4,000, which was sufficient to satisfy all of the executions and the money was paid to him. The defendant, knowing all of the facts "induced and caused the sheriff to pay over to him all of the proceeds of the sale of said goods which was left after paying the amount of the first execution [$800], including the portion thereof belonging to plaintiffs, and, although requested to pay over their share to plaintiffs, refuses to do so." It was there contended that the plaintiffs' cause of action was against the sheriff. The court held:

"It was immaterial that the sheriff paid the money to defendant in his wrong, and that plaintiffs may still have their remedy against him. Having a choice of remedies, the plaintiffs may elect."

4. The defendant further contends that the trial court erred in allowing interest from October 23, 1916, when the defendant receipted for the money. In the instant case the defendant did not offer any evidence

and there is no dispute as to any material facts. Section 7988, Or. L., says:

"The rate of interest in this state shall be 6 per centum per annum and no more, and shall be payable in the following cases, to wit: * *

"Subd. 3. On money received to the use of another and retained beyond a reasonable time without the owner's consent, express or implied."

Upon the theory that this is an action for money had and received, under the decision of this court in *Graham* v. *Merchant,* 43 Or. 294 (72 Pac. 1088), the plaintiff would be entitled to interest from October 23, 1916. That decision was further explained, and in some respects overruled, in *Holtz* v. *Olds,* 84 Or. 567 (164 Pac. 1184), which is also an action for money had and received. On page 581 of the opinion, it is said:

"If A pays money to B to be given to C, the money had been received by B to the use of C. From the moment of the payment to B the money belongs to C and not to B, for it was in fact received for the use of C and at no time is B the owner of the money. Interest can be allowed only when two elements combine: (1) The money must be received to the use of another; and (2) it must be retained beyond a reasonable time without the owner's consent. When the statute speaks of money received to the use of another it means money which in fact is received to the use of another; it does not include money which, by the aid of a legal fiction interposed after the actual receipt of the money, is treated as money received to the use of another. * * The statute contemplates that the person who actually has the money is at no time the owner, but he has only received the money to the use of another who is in truth the owner during all the time. When the statute speaks of the consent of the owner it necessarily signifies that some person other than the holder of the money is in fact, and not by reason of a fiction, the owner."

As to the instant case, in the ordinary course of business, the defendant would have paid the $3,094.75 in money or its equivalent to the sheriff who made the sale, and the sheriff would have paid it to the county clerk, and he would have paid the defendant the amount necessary to fully satisfy his decree and would have been then paid the remaining amount of $754.73 to the plaintiff here. After the sale was made, that amount legally became and was her money, and it never was the money of the defendant, and should not have been paid to him. If the money had remained with the county clerk and he had refused to pay it over, he would have been legally liable to the plaintiff. Here the county clerk delivered plaintiff's money to the defendant who refused to pay it to the plaintiff. It was her money and she does not have to resort to any legal fiction to recover it from the defendant. Her claim is not based upon equity and good conscience. It is founded upon a legal liability which attached at the time defendant took and receipted for her money. Judgment is affirmed.

AFFIRMED. REHEARING DENIED.